# UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY



MARTIN LUTHER KING JR. FEDERAL BLDG. & U.S. COURTHOUSE
50 WALNUT STREET, P.O. BOX 419
NEWARK, NJ 07101-0419
**(973) 645-6340**

**WILLIAM J. MARTINI**
   **JUDGE**

## LETTER OPINION

June 25, 2008

Mark D. Miller
Olender Feldman, LLP
2840 Morris Avenue
Union, NJ 07083
*Attorney for Plaintiff*

Robert A. Assuncao
Morison, Ansa, Holden, Assuncao & Prough, LLP
Two Tower Center Boulevard
Suite 1600
East Brunswick, NJ 08816-1100
*Attorney for Defendant*s

  Re: *Gold Cross Safety Corp., Inc. v. PHH Vehicle Management, et al.*
     Civil Action No. 07-cv-2401 (WJM)

Dear Litigants:

  This matter comes before the Court on a Motion to Dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure by Defendants PHH Vehicle Management Services, LLC, PHH Vehicle Management Services Corporation, and The Travelers Indemnity Company (collectively, "Defendants"). There was no oral argument. Fed. R. Civ. P. 78. For the reasons stated below, Defendants' motion is **GRANTED IN PART** and **DENIED IN PART**.

### BACKGROUND

  Plaintiff Gold Cross Safety Corporation, Inc. ("Gold Cross") is a successor-in-interest to InnerAction Safety, Inc. ("InnerAction"). InnerAction created interactive driver safety programs entitled "S.A.F.E. Plus," "S.A.F.E. Plus 2000," and "S.A.F.E. Fleet." These programs included copyrighted videotapes and workbooks. On March 17,

1997, Defendants PHH Vehicle Management Services Corporation and PHH Vehicle Management Services, LLC (collectively, "PHH"), a company providing commercial car and truck fleets and fleet management services, entered into a contract with InnerAction to sell copies of InnerAction's driver safety workbooks and loan copies of driver safety videotapes to PHH's customers ("the Agreement").  Defendant The Travelers Indemnity Company ("Travelers"), an insurance company, contracted with PHH for various fleet services, including driver safety programs.

Gold Cross alleges that from 1995 to 2006, PHH ordered copies of driver safety workbooks for use with over 4,100 driver safety videotapes from InnerAction and later, from Gold Cross as successor-in-interest to InnerAction.  In August 2006, Gold Cross asked PHH to account for the videotapes provided to PHH for the driver safety programs.  PHH was able to locate or account for approximately 100 videotapes.  Gold Cross approximates the value of the missing or unaccounted for videotapes to be approximately $2 million.

Gold Cross further alleges that PHH, instead of loaning the videotapes to PHH's customers as required under the Agreement, sold or transferred ownership of the unaccounted for videotapes and infringed upon the copyrights owned by Gold Cross.  Defendant Travelers is alleged to be one of the companies that has refused to return and/or account for the driver safety videotapes that it obtained from PHH.  Gold Cross asserts that PHH wrongfully sold, charged, and/or fined its customers for failing to return the driver safety videotapes and also improperly retained the proceeds of such sales, charges, and/or fines.  The Agreement between Gold Cross and PHH was terminated in April 2007.

In May 2007, Gold Cross filed this suit seeking damages in excess of $2 million, specific performance in the form of accounting and return of the driver safety videotapes by PHH, indemnification from PHH, and an injunction against Defendants for copyright infringement and breach of contract.  Additionally, Gold Cross seeks an order directing the return of the videotapes as well as treble damages from Defendants for common law trademark infringement and unfair competition in violation of N.J.S.A. 56:4-1.

On October 16, 2007, Defendants filed a motion to dismiss various parts of Plaintiff's Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6).  Specifically, Defendants assert that the Amended Complaint fails to state claims of copyright infringement and unfair competition.  Additionally, Defendants argue that Plaintiff cannot appropriately seek certain forms of relief requested in the Amended Complaint.  Plaintiff opposed Defendants' motion, and the motion was fully briefed on November 16, 2007.

## ANALYSIS

A.     **Standard of Review**

In deciding a motion to dismiss under Fed. R. Civ. P. 12(b), all allegations in the complaint must be taken as true and viewed in the light most favorable to the plaintiff. *See Warth v. Seldin*, 422 U.S. 490, 501 (1975); *Trump Hotels & Casino Resorts, Inc., v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998). In evaluating a Rule 12(b)(6) motion to dismiss for failure to state a claim, a court may consider only the complaint, exhibits attached to the complaint, matters of public record, and undisputedly authentic documents if the plaintiff's claims are based upon those documents. *See Pension Benefit Guar. Corp. v. White Consol. Indus.*, 998 F.2d 1192, 1196 (3d Cir. 1993). If, after viewing the allegations in the complaint in the light most favorable to the plaintiff, it appears that no relief could be granted "under any set of facts that could be proved consistent with the allegations," a court may dismiss a complaint for failure to state a claim. *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984).

Although a complaint need not contain detailed factual allegations, "the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965, 167 L. Ed. 2d 929 (2007). Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level. *See id*. at 1964-65. Furthermore, although a court must view the allegations as true in a motion to dismiss, it is "not compelled to accept unwarranted inferences, unsupported conclusions or legal conclusions disguised as factual allegations." *Baraka v. McGreevey*, 481 F. 3d 187, 211 (3d Cir. 2007).

B.     **Count One - Copyright Infringement**

Count One alleges that Defendants PHH violated Plaintiff's copyrights by distributing copies of the driver safety videotapes without Plaintiff's permission. (Am. Compl. ¶¶ 36-39.) Count One also alleges that Defendant Travelers possesses copies of Plaintiff's copyrighted videotapes without authorization from Plaintiff and has refused to return and/or account for the distributed videotapes. (Am. Compl. ¶¶ 33-36.) Defendant Travelers also is alleged to have been further distributing videotapes without Plaintiff's knowledge or permission. (Am. Compl. ¶ 35.) In their motion to dismiss, Defendants argue that Plaintiff's claim is mislabeled as a copyright infringement claim and is more appropriately a breach of contract claim. (Defs.' Br. 7.) Furthermore, Defendants argue that the "first sale doctrine" bars Plaintiff's infringement claim. These arguments are addressed in turn.

### 1. Breach of contract versus copyright infringement

To state a claim of federal copyright infringement, a plaintiff must show that: (1) the plaintiff is the valid owner of the copyright; and (2) the defendant engaged in an unauthorized copying of original elements of the copyright owner's work. *Dun & Bradstreet Software Servs., Inc. v. Grace Consulting, Inc.*, 307 F.3d 197, 206 (3d Cir. 2002). "Copying" in this context means "the act of infringing any of the exclusive rights that accrue to the owner of a valid copyright, as set forth at 17 U.S.C. § 106, including the rights to distribute and reproduce copyrighted material." *Kay Berry, Inc. v. Taylor Gifts, Inc.*, 421 F.3d 199, 207 (3d Cir. 2005). Thus, once it is established that the plaintiff is a valid copyright owner, the operative question is whether the defendant's unauthorized actions encroach upon the exclusive rights of the copyright-holding plaintiff.

The mere fact that a contract dispute involves copyrights, however, does not mean that there is copyright infringement claim, unless the dispute arises under the federal copyright laws. *See Greenfield v. Twin Vision Graphics, Inc.*, 268 F. Supp. 2d 358, 369 (D.N.J. 2003)(citations omitted). Thus, where a plaintiff/licensor seeks "seeks relief directly under the licensing agreement," such as the payment of royalties prescribed by an agreement or a resolution of the ownership of the intellectual property under a contract, "then the claim is merely a state law contract claim." *Id*. If, however, the plaintiff/licensor alleges copyright infringement based upon the defendant/licensee's use of copyrighted material outside the scope of the license, then a claim under federal copyright law is appropriate. *Id*. at 371.

In this case, Plaintiff alleges, and Defendants do not contest at this stage, that Plaintiff holds registered copyrights for some of the videotapes at issue in this case.[1] As the owner of a valid copyright, Plaintiff retained the exclusive right to reproduce and distribute the copyrighted materials. The parties acknowledge that the Agreement sets forth certain authorized uses of this copyrighted material by PHH. The parties differ, however, regarding the scope of the authorized use.

Defendants assert, citing to *Greenfield,* 268 F. Supp. 2d at 369, and *Wolfe v. United Artists Corp.*, 583 F. Supp. 52, 56 (E.D. Pa. 1983), that where a copyright holder agrees to the distribution of the copyrighted material, any dispute involving the distribution is governed by contract law, not by federal copyright law. (Defs.' Br. 7-8.) Since the Agreement addressed the distribution of Plaintiff's videotapes to PHH and PHH's clients, Defendants argue that Plaintiff's allegations regarding PHH's subsequent

---

[1] As Plaintiff concedes that there is no registered copyright for the S.A.F.E. Plus videotapes, the Court will dismiss any claims of federal copyright infringement with respect to these tapes. (Pl.'s Br. 3.)

4

sale or transfer of ownership of the videotapes to PHH's clients, failure to account for the missing tapes, failure to collect the loaned videotapes, and assessment of fines and retention of fines are governed by the terms of the Agreement.  Thus, Defendants argue that Plaintiff's allegations state merely breach of contract claims–not claims of copyright infringement.

The Court finds Defendants' arguments unpersuasive.  Defendants' sweeping generalization, that "once the holder [of a valid copyright] enters into an agreement granting another the right to distribute the product under certain circumstances, any alleged violation of the distribution rights is governed by the terms of that agreement," misstates the relevant case law.  (Defs.' Br. 7-8).  Courts have long held that the existence of a contract governing the use of copyrighted material need not necessarily preclude a claim of copyright infringement.[2]  For example, a plaintiff/licensor who contracts with a defendant for a nonexclusive license may "bring suit for copyright infringement if the licensee's use goes beyond the scope of the nonexclusive license" because "a nonexclusive license does not transfer ownership of the copyright from the licensor to the licensee."  *MacLean Assoc., Inc. v. Wm. M. Mercer-Meidinger-Hansen, Inc*., 952 F.2d 769, 779 (3d Cir. 1991).

In *Greenfield*, a claim of copyright infringement was appropriate in a case involving contracts where the defendant's use of the copyrighted material was outside the scope of the contract.  The court held that where a plaintiff asserts use by the defendants "outside the scope of the license," those defendants "stand in the same position as a stranger to the license, and [a p]laintiff may bring an action against them for infringement."  268 F. Supp. 2d at 372.  Thus, even in the presence of a binding agreement regarding the distribution of copyrighted material, a plaintiff may assert a claim for copyright infringement so long as the alleged distribution was prohibited by a condition restricting the authorized distribution.

---

[2] The Court finds it instructive to examine when a claim "arises under" the federal copyright laws for the purposes of 28 U.S.C. § 1338(a), establishing exclusive federal jurisdiction for copyright cases. Courts have generally held that "notwithstanding the existence of a contractual relationship between the parties if the defendant's conduct is alleged to be without authority under such contract and further to constitute an act of statutory copyright infringement, then federal jurisdiction will be invoked."  3 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 12.01(A)(1)(a), at 12-6 (2008). Therefore, courts have concluded that a complaint arises under the Copyright Act if the "complaint is for a remedy expressly granted by the Act, e.g., a suit for infringement."  *Bassett v. Mashantucket Pequot Tribe*, 204 F.3d 343, 355 (2d Cir. 2000).  Similarly, a claim for copyright infringement, as opposed to a breach of contract, may be asserted where a plaintiff alleges that a defendant's unauthorized use of copyrighted material infringed upon one of the rights protected under federal copyright laws.

In this case, Plaintiff alleges that PHH was authorized to distribute to its clients Plaintiff's copyrighted videotapes subject to the condition that PHH could not distribute these videotapes for sale to its clients. Defendants have not clearly articulated how this restrictive condition in distribution is different from any other condition in a nonexclusive license authorizing distribution under certain circumstance, for a limited period of time, or within a geographic scope.[3] As alleged in the Amended Complaint, PHH in fact did sell or transfer ownership of these copyrighted videotapes despite being only authorized to distribute the videotapes to their clients "on loan." Defendants' acts therefore may reasonably be viewed as use of copyrighted material beyond the scope of the distribution permitted under the Agreement, and Plaintiff has properly alleged a claim for copyright infringement.

Defendants reliance on *Wolfe* to support its position that Plaintiff has failed to allege a claim for copyright infringement is unavailing. In *Wolfe*, the alleged infringing acts, such as the use of a copyright notice, removal of a credit in authorship pursuant to an otherwise valid licensing agreement, and payment of royalties pursuant to a contractual agreement, simply were not one of the exclusive rights held by copyright owners under the statute. *Id*. at 56. Thus, *Wolfe* merely stands for the general proposition that a copyright infringement claim arises only where the defendant's acts infringe upon one of the exclusive rights set forth in 17 U.S.C. § 106. 583 F. Supp. at 55. In this case, Plaintiff alleges that PHH "infringed [Plaintiff's] copyright in the Videotapes by distributing copies of the Videotapes to PHH, LLC's client companies by sale or other transfer of ownership, without the authorization of [Plaintiff]." (Am. Compl. ¶ 37.) Since the right to distribute copyrighted materials is clearly an exclusive right established under federal copyright law, Plaintiff's copyright infringement claim in Count One cannot be appropriately dismissed.

### 2.     First sale doctrine

Defendants argue that the first sale doctrine precludes Plaintiff's copyright infringement claims. The first sale doctrine allows the "owner of a particular copy lawfully made . . . to sell or otherwise dispose of the possession of the copy" without the authority of the copyright owner. 17 U.S.C. § 109(a). Defendants thus argue that the Agreement expressly sold the videotapes to PHH, and under the first sale doctrine,

---

[3] Although Defendants characterize the agreement as a "sale" of the videotape copies, as discussed in the following section, the Court is unable to conclude at this juncture that the language of the Agreement is as unambiguous as urged by Defendants. Therefore, in viewing the allegations in a light most favorable to Plaintiff, the Court finds that the Agreement could reasonably be interpreted as intending to grant Defendants a nonrestrictive license.

Plaintiff cannot assert a copyright infringement claim against the subsequent distribution or sale of the copy.

The first sale doctrine, codified in Section 109(a) of the Copyright Act, 17 U.S.C. § 109(a), states "that once the copyright owner places a copyrighted item in the stream of commerce by selling it, he has exhausted his exclusive statutory right to control its distribution." *Quality King Distribs. v. L'Anza Research Int'l*, 523 U.S. 135, 152 (1998). Thus, a plaintiff has no copyright infringement claim for later distribution of a copyrighted product where the copyright owner consented to the sale of that particular copyrighted product. In this case, the difficulty with barring Plaintiff's infringement claims based upon the first sale doctrine is that the Court must presume that Plaintiff sold, rather than licensed, copies of the videotapes to PHH under the Agreement. The Court at this stage is unable to make such a presumption.

The two-page Agreement states in pertinent part: "InnerAction will supply S.A.F.E. Plus tapes to PHH. PHH's active video safety clients can receive updated PHH 'S.A.F.E. Plus 2000' videos to replace current tapes at no extra cost." (Am. Compl. Ex. C.) Furthermore, the Agreement provides for pricing structures for various combinations of workbooks and videotapes, and the parties mutually agreed not to market or advertise the videotapes or workbooks below a certain price. The Agreement, however, expressly states that "PHH agrees that tapes will be lent, not sold, to PHH's clients," and "PHH acknowledges that InnerAction holds copyrights to the workbooks and tapes. All PHH video and workbook training sales shall be subject to InnerAction's copyrights." (Am. Compl. Ex. C.)

The Court notes that exactly what was contemplated by the parties at the time of contract is far from clear based upon the plain language of the Agreement. On one hand, the Agreement makes clear that the parties were aware of Plaintiff's copyrights and that PHH's distribution of the copyrighted materials was subject to Plaintiff's copyrights. It is also clear that the parties intended to prohibit the further sale of the videotapes by PHH. On the other hand, the language in the agreement distinguishes between sales and licenses, referring to "licensing agreements" with PHH's clients and "sales" of PHH video and workbook training. The language appears to suggest that PHH could sell "videos and workbook training" and at the same time, acknowledges that the tapes would be "lent, not sold, to PHH's clients." These confusing statements are interpreted by the parties as either an express statement that the videotapes were being sold to PHH, or as a general, if inarticulate, statement that PHH's sale of its driver safety training program was subject to InnerAction's copyrights. (Pl.'s Br. 10; Defs.' Br. 10.)

Additionally, the pricing structure contained in the Agreement adds little, if any, clarity. Although there is an agreed upon per unit price for a combination of "workbooks and tapes," there is also a section that details a profit sharing agreement between PHH and Plaintiff from PHH's licensing agreements with its clients. The former would likely indicate a sale, while the latter indicates a sublicense. In any event, extrinsic evidence of the parties intent, along with course of dealings and trade usage, would at least be relevant in the Court's construction of the ambiguous terms of the Agreement.

The lack of clarity from the plain terms of the Agreement informs the Court that a dismissal of the copyright infringement action would be imprudent at this stage of the litigation. Defendants characterize the Agreement as a "sale" of the videotapes with certain restrictions on later sales by PHH (Defs.' Br. 10.), while Plaintiff characterizes the Agreement as a poorly drafted non-exclusive license. (Pl.'s Opp. Br. 10.) The ultimate intent of the parties will require the benefit of discovery into the intent of the parties at the time of contract. Thus, the Court will deny Defendants' motion to dismiss Plaintiff's claim of copyright infringement.

C. **Count Three - Common Law Trademark Infringement and Unfair Competition**

Defendants argue that Count Three should be dismissed because there are no allegations in the Amended Complaint that: (1) PHH attempted to pass off Plaintiff's videotapes as their own or engaged in unfair or deceptive practices; or (2) there was any consumer confusion as a result of the breach of contract, an element of unfair competition. The Court agrees.

First, Plaintiff cites N.J.S.A. 56:4-1, et seq., as the statutory basis for its claim. N.J.S.A. 56:4-1 provides that "[n]o merchant, firm or corporation shall appropriate for his or their own use a name, brand, trade-mark, reputation or goodwill of any maker in whose product such merchant, firm or corporation deals." Nevertheless, Plaintiff responds in its Opposition Brief that "[c]ommon law unfair competition is a business tort that is not identified only by N.J.S.A. 56:4-1." (Pl.'s Opp. Br. 13.) Plaintiff redefined Count Three as seeking the common law tort of unfair competition based upon the wrongful misappropriation of Plaintiff's property and the tortious exploitation of Plaintiff's product. Thus, the Court finds that Plaintiff has dropped its allegations of statutory unfair competition and trademark infringement pursuant to N.J.S.A. 56-41.

Second, Plaintiff has failed to state a claim for common law trademark infringement. Under New Jersey law, the key element of common law trademark infringement or unfair competition based upon trademark infringement is the likelihood

8

of consumer confusion.  *See Merchant & Evans, Inc. v. Roosevelt Bldg. Prods. Co.*, 963 F.2d 628, 640 (3d Cir. 1992); *see, e.g.*, *Matrix Essentials, Inc. v. Cosmetic Gallery, Inc.* 870 F. Supp. 1237, 1253 (D.N.J. 1994).  Plaintiff has failed to allege any consumer confusion in its Amended Complaint, and therefore, the common law trademark infringement claim will be dismissed.

Third, the Court finds that Plaintiff's general claim for common law unfair competition is preempted by federal copyright law.  Federal copyright law preempts state statutory or common law causes of action if those actions are based on claims "equivalent to the exclusive rights within the general scope of the Copyright Act."  *Dun & Bradstreet Software Serv., Inc.*, 307 F.3d at 217 (citation omitted).  The test for preemption is whether the cause of action contains an "extra element" not provided under the Copyright Act, and that extra element is sufficient to establish a qualitative variance from the rights protected under the Copyright Act.  *Id.* at 218.

Plaintiff asserts that the elements of an unfair competition claim under New Jersey law is broad, and the fundamental element which defines this tort is "the misappropriation of one's property by another – property which has some sort of commercial or pecuniary value."  *N.J. Optometric Assoc. v. Hillman-Kohan Eyeglasses, Inc.*, 144 N.J. Super. 411, 427 (Ch. Div. 1976), aff'd 160 N.J. Super. 81 (App. Div. 1978).  Plaintiff argues that the misappropriation occurred when Defendants claimed Plaintiff's property as their own and distributed the videotapes to unauthorized persons without Plaintiff's permission.  (Pl.'s Opp. Br. 15.)  Further, this misappropriation resulted in lost profits to Plaintiff from the sale or license of videotapes and workbooks.  Aside from the ancillary element of damages, these allegations are essentially the elements of Plaintiff's copyright claim, namely that (1) Plaintiff owned the copyright, (2) Defendants distributed the videotapes to unauthorized persons, and (3) Defendants acted without Plaintiff's permission.  As these causes of action are equivalent to Plaintiff's copyright claim, Plaintiff's unfair competition claim is preempted and dismissed.  *See, e.g.*, *Dun & Bradstreet Software Serv., Inc.*, 307 F.3d at 217 ("misappropriation causes of action are not preempted if they are based on claims not equivalent to the exclusive rights within the general scope of the Copyright Act")

**D.     Remedies**

Defendants' attempt to dismiss certain remedies, such as monetary damages for failure to return videotapes**,** specific performance, indemnification, and federal statutory damages for S.A.F.E. Plus 2000, is premature at this time.  As the Court stated previously, the terms of the Agreement are ambiguous, and damages resulting from the claims will require further discovery.  With regards to the issue of statutory damages for

the alleged copyright infringement of S.A.F.E. Plus 2000 videotapes, it would be premature for the Court to conclude when the alleged infringement occurred without the benefit of specific evidence, and therefore, Defendants' motion to dismiss this form of relief is denied at this time.

With regards to Defendants' motion to dismiss Plaintiff's relief in the form of a preliminary injunction, the Court will grant the motion as Plaintiff concedes that no preliminary injunction is being sought. (Pl.'s Opp. Br. 16.)

## CONCLUSION

For the reasons stated above, Defendants' motion to dismiss is granted in part and denied in part. An appropriate order follows.

s/William J. Martini

**William J. Martini, U.S.D.J.**